UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS HERRERA, as an individual and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SIGNATURE FLIGHT SUPPORT LLC, a Delaware limited company; and DOES 1 to 100, inclusive,<br><br>　　　　　Defendants. | Case No. 2:22-cv-03082-SSS (AGRx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT AND REQUEST FOR ATTORNEYS' FEES [DKTS. 11 & 16]** |

Before the Court is Plaintiff Dennis Herrera's Motion to Remand Action to State Court and Request for Attorneys' Fees [Dkt. 16]. For the reasons set forth below, Plaintiff's motion and request are DENIED.

## I. BACKGROUND

Plaintiff works for Defendant Signature Flight Support, LLC ("Signature") as a non-exempt, hourly-paid employee. [Dkt. 1-2 ¶ 2]. Signature provides aircraft fueling and non-fuel aviation services, including technical support, aircraft maintenance and repair service, flight support, charter services, and aircraft management for business and private aviation. [*Id.* ¶ 3].

On March 16, 2022, Plaintiff filed a class action complaint against Defendant in the Superior Court of California, County of Los Angeles alleging seven causes of action: 1) recovery of unpaid minimum wages and liquidated damages, 2) recovery of unpaid overtime wages, 3) failure to provide meal periods or compensation in lieu thereof, 4) failure to provide rest periods or compensation in lieu thereof, 5) failure to furnish accurate itemized wage statements, 6) failure to reimburse business expenses, and 7) unfair competition. [Dkt. 1-2 ¶¶ 49–106]. On May 2, 2022, Defendant filed its Answer. [Dkt. 1-3].

On May 6, 2022, Defendant filed a Notice of Removal alleging jurisdiction under 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"). [Dkt. 1 at 4]. On July 8, 2022, Plaintiff filed the instant motion to remand the case back to state court. [Dkt. 16].

## II. LEGAL STANDARD

Under CAFA, the Court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs," and is a class action in which there is minimal diversity. 28 U.S.C. § 1332(d)(2). However, where the plaintiff challenges removal, under 28 U.S.C. § 1446(c)(2)(B), removal is proper only if "the district court finds, by the preponderance of the evidence, that the amount in

controversy [asserted by the defendant] exceeds" the jurisdictional threshold. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). In other words, the "defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy" meets or exceeds the jurisdictional threshold. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403 (9th Cir. 1996).

In meeting this burden, removing defendants are permitted to rely on "a chain of reasoning that includes assumptions." *Arias v. Residence Inn,* 936 F.3d 920, 925 (9th Cir. 2019) (*citing Ibarra v. Manheim Invs., Inc.*, 775 F. 3d 1193, 1199 (9th Cir. 2015)). "[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Id.* at 927. Accordingly, in the context of "assumed violation rates" there is no "requirement that [a defendant] prove it actually violated the law at the assumed rate," a defendant merely needs to provide a reasonable ground for the assumption. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[W]hen the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that **both sides** submit proof and the court then decides where the preponderance lies." *Id.* at 1198 (emphasis added).

Defendant may also re-calculate the amount in controversy in opposing remand. *See, e.g.*, *Fong v. Regis Corp.*, 2014 WL 26996 ("A court may properly consider evidence the removing party submits in its opposition to remand, even if this evidence was not submitted with the original removal petition.") (citation omitted); *Cavada v. Inter-Continental Hotels Grp., Inc.*, No. 19cv1675, 2019 U.S. Dist. LEXIS 190302, at *18-20 (S.D. Cal. Nov. 1, 2019) ("As to rest break, in their opposition, Defendants reduce the number of violations as stated in the Notice of Removal and now assert that their

assumption is based on just one rest period violation per week, a 10% violation.").

### III. DISCUSSION

Plaintiff argues Defendant failed to establish the amount in controversy for Plaintiff's meal and rest period claims because it has not provided sufficient evidence to show that its assumptions are reasonable. [Dkt. 16 at 11–12]. In Defendant's Notice of Removal, it calculated the amount in controversy for the meal and rest period claims by multiplying the number of aggregate workweeks worked by class members during the class period (62,192), the average hourly rate ($20.29), and the number of violations per workweek. [Dkt. 1 ¶¶ 33–34].

Plaintiff only disputes the number of Class Members and number of violations per workweek ("violation rate") Defendant used in its calculations. Plaintiff does not dispute that an employee who works eight hours in one day is entitled to at least one meal break and one rest period that day. [*See* Dkt. 1 at 11 n.1–2 (citing 8 Cal. Code Regs. § 11190)); Dkt. 16 at 11–14]. Plaintiff also does not dispute the mathematical formula, number of workweeks, or average hourly rate Defendant used. [Dkt. 16 at 11–14].

#### A. Number of Class Members

Plaintiff argues "while Plaintiff may have worked eight hour shifts each workweek which entitled him to one meal period and at least one rest period, [that] does not mean that each proposed Class Member also worked eight-hour shifts." [Dkt. 16 at 12]. But Defendant's assumptions "need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Arias*, 936 F.3d at 927. "An assumption is reasonable when it is supported by the allegations of the plaintiff's complaint." *Danielsson v. Blood Ctrs. Of the Pac.*, No. 19-cv-04592, 2019 U.S. Dist. LEXIS 222539, at *14 (N.D. Cal. Dec. 30, 2019).

Defendant's assumption that each proposed Class Member also worked eight-hour shifts is reasonable and supported by the allegations in the complaint. Throughout the complaint, "Plaintiff does not qualify [his] allegations to be on behalf of anything less than all the [Class Members]." *Lopez v. Aerotek, Inc.*, No. SACV 14-00803, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015). Indeed, Plaintiff consistently tethered and equated his experiences to those of the other Class Members. [*See, e.g.*, Dkt. 1-2 ¶¶ 70 ("DEFENDANTS' policies and practices that failed to relieve PLAINTIFF and other Class Members of all duties and employer control during meal breaks and or commentary . . ."), 71 ("DEFNDANTS also failed to provide PLAINTIFF and the Class Members with duty-free, uninterrupted, thirty-minute, second meal periods before the end of the tenth hour of work when working more than ten hours."), 78 ("PLAINTIFF and the Class Members did not receive compliant, timely, net, ten-minute rest periods every four (4) hours worked or major fraction thereof.")].

Moreover, Plaintiff fails to identify any allegations or evidence that suggest Defendant's assumption that each Class Member worked eight-hour shifts is unreasonable, and Plaintiff does not even suggest what proportion of Class Members did work eight-hour shifts and what number should be used instead. Thus, it was reasonable for Defendant to assume each Class Member worked at least an eight-hour shift. *See Danielsson*, 2019 U.S. Dist. LEXIS 222539, at *18-19 ("An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be less than the requisite[ ] amount . . .") (quoting *Arias*, 936 F.3d at 927).

### B. Violation Rate

Plaintiff also disputes the number of violations per workweek Defendant used in its calculations. In the complaint, Plaintiff alleges "his meal periods

were interrupted, worked through, and/or late at least three out of every five shifts he worked," [Dkt. 1-2 ¶ 17], a 60% violation rate. In its Notice of Removal, Defendant used a conservative 20% violation rate for the meal and rest period claims, meaning Defendant assumed only one missed meal per week, and one missed rest break per week.[1] [Dkt. 1 ¶¶ 33–34]. In its opposition brief, Defendant also provided calculations for two, three, and five meal period and rest period violations per week. [Dkt. 15 at 14–15].

Plaintiff argues that "Defendant also does not explain why it is reasonable to assume that every single Class Member was deprived of one meal period and one rest period per week for the entirety of the Class Period." [Dkt. 16 at 12]. According to Plaintiff, his "allegation that he missed three of five meal periods per workweek does not mean that every single one of the proposed Class Members similarly did not receive meal periods for majority [sic] of their shifts." [*Id.* at 12].

Based on Plaintiff's own allegations of a 60% violation rate, it is reasonable for Defendant to assume that other Class Members also experienced at least a 60% violation rate (three violations per week). "Plaintiff does not qualify [his] allegations to be on behalf of anything less than all the employees." *Lopez*, 2015 WL 2342558, at *3. Moreover, "Plaintiff's argument is undercut by the nature of averages: even if a handful of class members may have experienced fewer violations than Defendant assumes, it is equally probable that other class members experienced more violations than Defendant assumed.

---

[1] Plaintiff incorrectly argues that "Defendant's [initial] estimate for Plaintiff's meal and rest period claims are based on a 100% violation rate." [Dkt. 16 at 13]. Defendant's initial estimate assumed one violation out of each five-day workweek, which is only a 20% violation rate. *See Cavada v. Inter-Continental Hotels Grp., Inc.*, No. 19cv1675, 2019 U.S. Dist. LEXIS 190302, at *18-20 (S.D. Cal. Nov. 1, 2019) ("Here, contrary to Plaintiff's argument, Defendants do not assert a 100% violation rate. They assert a conservative violation rate of one meal period violation per week, a 20% violation.").

Defendant need not prove the exact violation rate for each member of the class for its amount in controversy estimate to be based on reasonable assumptions." *Danielsson*, 2019 U.S. Dist. LEXIS 222539, at *18-19 (citing *Arias*, 936 F.3d at 927). Further, Plaintiff does not point to any allegations or evidence that suggest a 60% violation rate is unreasonable.

Moreover, as Defendant demonstrates, the nature of Plaintiff's allegations in the complaint would even support a 100% violation rate. "A 100% violation rate is proper when the plaintiff's complaint alleges that the defendant always engages in labor violations." *Sanchez v. Russell Sigler, Inc.*, No. CV1501350, 2015 WL 12765359, at *5 (C.D. Cal. Apr. 28, 2015) (finding allegations that Defendant violated meal and rest periods "at all material times" supported a 100% violation rate); *see, e.g.*, *Feltzs v. Cox Commc'ns Cal., LLC*, No. SACV192002, 2020 WL 133687, at *4 (C.D. Cal. Jan. 13, 2020) (finding allegations of "consistently" violating meal periods supported a 100% rate); *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-CV-00222, 2014 WL 2199645, at *7 (N.D. Cal. May 27, 2014) (finding allegations of "consistent and universal meal period violations" supported a 100% violation rate); *Duberry v. J. Crew Grp., Inc.*, No. 214CV08810, 2015 WL 4575018, at *6 (C.D. Cal. July 28, 2015) (finding allegations of "uniform policy," "systematic scheme," and violations occurring at "all material times" supported 100% violation rate) (citing *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890, 2015 WL 2452755, at *1 (C.D. Cal. May 21, 2015) (finding allegations of "uniform policies, practices and procedures" causing labor law violations supported a 100% violation rate)).

Here, similar to the allegations that other courts have found support a 100% violation rate, Plaintiff made numerous allegations that Defendant was in constant violation of meal and rest periods without any qualifying language:

- "Moreover, PLAINTIFF and the Class Members were required to monitor and be responsive to work communication devices, such as but not limited to, a company-provided walkie talkie as well as to carry a company phone and answer it as needed during purportedly off-duty meal periods. PLAINTIFF and the Class Members were required to remain on DEFENDANTS' premises **during meal periods**. As such, PLAINTIFF and the Class Members remained subjected to DEFENDANTS' control **during meal periods**." [Dkt. 1-2 ¶ 16 (emphasis added)].

- "Based on information and belief, DEFENDANTS had a **uniform policy and practice** of requiring PLAINTIFF and other Class Members to remain tethered to their worksite and/or work communication devices **during meal periods**." [*Id.* ¶ 18 (emphasis added)].

- "Based on information and belief, DEFENDANTS implemented policies and practices that failed to relieve the Class Members of all duties and employer control **during any rest periods**. For example, based on information and belief, DEFENDANTS required PLAINTIFF and other Class Members to remain on the worksite premises and/or tethered to work-communication devices during any rest periods. As such, PLAINTIFF and other Class Members remained under DEFENDANTS' control **during any rest period**, rendering said rest periods on duty and therefore noncompliant with California rest period law." [*Id.* ¶ 26 (emphasis added)].

Thus, the allegations in the complaint would support even a 100% violation rate. But Defendant need not go that far because a 60% violation rate for the proposed class, the same violation rate Plaintiff specifically pled for himself [*see* Dkt. 1-2 ¶ 17], suffices to surpass the CAFA jurisdictional requirement.

      Based on a 60% violation rate, the Court finds by the preponderance of the evidence that the requisite amount in controversy for purposes of CAFA jurisdiction is met. For Plaintiff's Third Cause of Action (Meal Periods), with a 60% violation rate, the amount in controversy is $3,785,627.04. [*See* Dkt. 15 at 14–15 (62,192 workweeks x 3 meal break penalties per workweek x $20.29/hr)]. Similarly, for Plaintiff's Fourth Cause of Action, with a 60% violation rate, the amount in controversy is the same, $3,785,627.04. [*See* Dkt. 15 at 14–15 (62,192 workweeks x 3 meal break penalties per workweek x $20.29/hr)]. Thus, the total amount in controversy based on the meal and rest period claims is $7,571,254.08, well over the $5 million requirement.[2]

## IV. CONCLUSION

      Defendant's calculations for the amount in controversy for Plaintiff's Third and Fourth Causes of Action (meal and rest period claims) are reasonable and satisfy the CAFA jurisdictional threshold of $5 million. Thus, the Court need not reach Plaintiff's arguments regarding the calculations for the other causes of action.

      For the foregoing reasons, the Court DENIES Plaintiff's Motion for Remand [Dkts. 11 & 16]. Accordingly, because Defendant's removal was not improper, the Court also DENIES Plaintiff's request for attorneys' fees.

      **IT IS SO ORDERED.**

Dated: September 13, 2022

SUNSHINE S. SYKES
United States District Judge

---

[2] The Court notes that even a conservative violation rate of 40% would still equal an amount in controversy of over $5 million and satisfy the requirement for CAFA jurisdiction. [*See* Dkt. 15 at 14–15 (62,192 workweeks x 2 meal break penalties per workweek x $20.29/hr = $2,523,751.36 x 2 (using identical calculation for rest periods) = $5,047,502.72)].